JAMES, J., dissenting.
In this case concerning personal jurisdiction, it is undisputed that defendant was a resident of Oregon for years. He had a home in Oregon. He ran his business from Oregon. He left Oregon less than eight weeks prior to the accident. Consequently, for me, the question is not whether defendant had "substantial and not isolated contacts" with Oregon. He clearly did-a result of his years as a resident. Rather, the question in this case is whether defendant's move to the United Kingdom (UK) had sufficiently disentangled those contacts with Oregon by the time this suit commenced so as to render jurisdiction in Oregon offensive to due process and "traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson , 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (internal quotation marks omitted). I conclude it had not.
*842 Oregon's long-arm statute, ORCP 4, lists multiple bases for an Oregon court to exercise jurisdiction over an out-of-state defendant in a civil case. "The rule outlines five general bases for establishing personal jurisdiction under ORCP 4 A, enumerates several more specific bases for personal jurisdiction under ORCP 4 B through K, and also provides a catchall provision under ORCP 4 L that confers jurisdiction to the extent permitted by due process." Robinson v. Harley-Davidson Motor Co. , 354 Or. 572, 576-77, 316 P.3d 287 (2013) (relying on State ex rel Circus Circus Reno, Inc. v. Pope , 317 Or. 151, 154-56, 854 P.2d 461 (1993) ).
In reality, the catchall provision of ORCP 4 L swallows all the specific jurisdiction subsections, rendering provisions 4 B through K mere illustration. We ultimately look to the limits of due process and, if jurisdiction does not offend, it is permissible. As courts have noted:
" 'Oregon's long-arm statute confers jurisdiction to the extent permitted by due process.' Gray & Co. v. Firstenberg Machinery Co., Inc. , 913 F.2d 758, 760 (9th Cir. 1990) (citing ORCP 4 L). Thus, the question for this court, as it was before the district court, is whether the assertion of personal jurisdiction comports with federal due process law."
Siskiyou Properties, LLC v. Bennett Holdings, LC , 13 Fed. Appx. 553, 555 (9th Cir. 2001) ; see also Hayden v. Shin-Etsu Handotai America, Inc. , 80 F. Supp. 2d 1119, 1120-21 (D. Or. 1999) ("Oregon's jurisdictional statute confers personal jurisdiction coextensive with due process. *** As a result, this court need only analyze whether exercising jurisdiction comports with due process."); Dainippon Screen Manufacturing Co. v. CFMT, Inc. , 142 F.3d 1266, 1270 (Fed Cir. 1998) ("because California's long-arm statute is coextensive with the limits of due process, *** the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process").
The bar for meeting due process is not high. In International Shoe Co. v. Washington , the Court held that a state court's assertion of personal jurisdiction satisfies the Due Process Clause if it does not violate " 'traditional notions of fair play and substantial justice.' " 326 U.S. 310, 316, 66 S.Ct. 154, 90 L Ed 95 (1945) (quoting *843 Milliken v. Meyer , 311 U.S. 457, 463, 61 S.Ct. 339, 85 L Ed 278 (1940) ); see also Insurance Corp. v. Compagnie des Bauxites , 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Even when the cause of action occurs outside of the forum state, "due process is not offended by a State's subjecting [a defendant] to its in personam jurisdiction when there are sufficient contacts between the State and the [defendant]." Helicopteros Nacionales de Colombia v. Hall , 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (emphasis added). Due process can be satisfied even when a defendant has essentially zero contacts with the forum, so long as service of process is accomplished while he is transiting through the forum. *926 Burnham v. Superior Court of Cal. , 495 U.S. 604, 619, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990).
As the Oregon Supreme Court has made clear, the exercise of jurisdiction over a nonresident defendant is consistent with due process, and thus constitutional, if the defendant has minimum contacts with the forum state and the assertion of jurisdiction would comport with notions of fair play and substantial justice. Circus Circus , 317 Or. at 159-60, 854 P.2d 461. Minimum contacts exist when "the defendant has 'purposefully directed' its activities at residents of the forum state and where the litigation 'arises out of or relates to' those activities." Id . at 159, 854 P.2d 461 (quoting Burger King Corp. v. Rudzewicz , 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ) (emphasis in original). As the Ninth Circuit has summarized:
Therefore, the narrow, three-part question is:
(1) Did the defendant do "some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws?"
(2) Did the claim "arise out of the defendant's forum-related activities?"
(3) Is "the exercise of jurisdiction [on the facts of the case] reasonable?"
Gray & Co. v. Firstenberg Machinery Co., Inc. , 913 F.2d 758, 760 (9th Cir. 1990) (referencing Shute v. Carnival Cruise Lines , 897 F.2d 377, 381 (9th Cir. 1990) ). I find that the *844 answers to those three questions support jurisdiction in this case.
Defendant moved to the United States in 1995, residing in Virginia. He obtained a United States social security number and formed and registered a business in the United States. Then, in 2011, he moved to Oregon, where he continued to operate that same business. With his move to Oregon, defendant rented an apartment and obtained an Oregon driver's license. As part of that application process, defendant averred that he was a resident of Oregon. Oregon law provides that "in order to be eligible for a driver license or permit issued by this state a person must be domiciled in or resident of this state." ORS 807.062(1). Defendant continued to reside in, and operate his business from, Oregon for the next four years, until May 2015.
Those four years of residency are what separate this case from the myriad personal jurisdiction cases involving out-of-state persons or corporations, like those relied upon by the majority, such as Circus Circus , 317 Or. at 153, 854 P.2d 461 ; Sutherland v. Brennan , 131 Or. App. 25, 28, 883 P.2d 1318 (1994), aff'd on other grounds , 321 Or. 520, 531, 901 P.2d 240 (1995) ; or Bachman v. Medical Engineering Corp. , 81 Or. App. 85, 88, 724 P.2d 858 (1986). Unlike all of those cases, here, defendant was an Oregonian. For years, he lived in Oregon, worked in Oregon, enjoyed what Oregon has to offer, and took advantage of the protections and privileges provided by Oregon. "One who resides in a state necessarily avails himself of the benefits and protections of its laws. The taking up of residence is, in fact, the quintessential act by which one avails himself of the privilege of conducting activities in the state." Geelhoed v. Jensen , 277 Md. 220, 231, 352 A.2d 818, 825 (1976).
The question, then, is when did those substantial contacts dissipate-in other words, when does one stop being an Oregonian? Although no Oregon case specifically answers that question, there is guidance from other jurisdictions, typically arising in the context of marital dissolution. In Beasley v. Beasley , the Georgia Supreme Court concluded that time away from the forum was one factor to consider, but in that case the defendant's absence from the forum for *845 seven years had not, per se , eliminated his necessary contacts with the state:
"Due process requires that individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign.' Burger King v. Rudzewicz , 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In evaluating whether a defendant could reasonably expect to be hauled into court in a particular forum, courts examine defendant's contacts with the state, focusing on whether (1) defendant has done some act to avail himself of the law of the forum state; (2) the claim is related to those acts; and (3) the exercise *927 of jurisdiction is reasonable, that is, it does not violate notions of fair play and substantial justice. ***
"Applying these principles to the facts set forth above, we conclude that defendant's contacts with this state are sufficient to satisfy due process. Under the first prong of [Smith v.] Smith , [254 Ga. 450, 330 S.E.2d 706 (1985) ], we note that defendant purposefully availed himself of the privilege of conducting activities in the forum by residing in this state for two years prior to marrying plaintiff, by obtaining a divorce from his former wife in this state, by marrying a resident of this state, by maintaining a marital residence in this state from 1979 to 1981, by returning to Georgia to retire from the military, by residing in Savannah for a short time thereafter, and by returning to Georgia for visits.
"The fact that defendant's contacts with this state took place several years ago does not affect the analysis under the first prong of Smith . Under the third prong of Smith , however, the length of time that has elapsed since defendant's purposeful activity in this forum may impact on the reasonableness of exercising jurisdiction."
260 Ga. 419, 421-22, 396 S.E.2d 222, 224-25 (1990).
Similarly, in Katz v. Katz , the New Jersey Superior Court concluded that time was a factor for consideration. However, it determined that 17 years was so lengthy as to render those contacts insignificant:
"Defendant left New Jersey seventeen years ago and has only returned here twice, briefly. Whatever ties he may have had with this State have evaporated over the years *846 and New Jersey's power to exercise personal jurisdiction over him has similarly disappeared."
310 NJ Super 25, 32, 707 A.2d 1353, 1356 (1998).
The Maryland Court of Appeals also found personal jurisdiction over a former resident, noting the significance of the time when the cause of action arose, even though it was not committed in the state:
"A more significant question, perhaps, arises from the fact that in this case appellee's contacts with the State had ceased before the commencement of the action. This fact is not, however, dispositive, since here appellee was a resident of the State at the time the cause of action arose[.]"
Geelhoed , 277 Md. at 233, 352 A.2d at 826.
I draw from those principles in reaching my result here. In this case, the record established that defendant left Oregon only six weeks before the automobile accident that formed the basis of the lawsuit. When defendant departed Oregon, he notified his Oregon landlord that his new address would be 1604 Southeast 48th Avenue, Portland, Oregon, not the UK. He used that same Oregon address for receiving mail, including important financial mail, rather than having his mail forwarded to the UK. Further, defendant did not leave for the UK on a one-way flight, but rather booked a return ticket back to Portland in six weeks. His return to Portland was to attend two professional conferences, one in Oregon and one in Seattle, Washington, related to the business he had run from Oregon for the previous four years. His attendance at those conferences was already planned for while he resided in Oregon.
On the date of the accident that underlies this lawsuit, and in transit to one of these professional conferences, defendant was driving a rental car that he obtained by presenting his Oregon driver's license to a rental car company. In using that license to rent the vehicle, he held himself out, implicitly, as an Oregon resident. When he was involved in the accident, he presented his Oregon driver's license to the investigating officer-again, implicitly holding himself out to be connected to Oregon. There is simply no plausible argument that this incident did not arise from his contacts with *847 Oregon. Further, those contacts continued after he departed the state and continued to exist at the time this suit was commenced. Defendant admitted in his deposition that well over a year after the accident he continued to intentionally retain his Oregon driver's license for the express purpose of securing a benefit from that state-issued privilege: reduced *928 rates on rental cars when he returned to the United States in the future.
In light of those facts, I conclude that defendant had done very little to disentangle himself from Oregon. His contacts with Oregon, gained through residency, were not erased the moment his flight to the UK departed Portland International Airport. And while his move is certainly an important consideration, it is not a dispositive factor. The move must be assessed in light of the roots defendant had planted in Oregon, that the accident occurred only six weeks after his departure for the UK, that the suit commenced a mere year and a half later, and that, at the time of suit, his contacts continued to remain entangled through the maintenance of his Oregon driver's license. I conclude that his contacts remained substantial, that he continued to "avail himself of the privilege of conducting activities in the forum," and that the accident was linked with the conduct of his activities in Oregon. I cannot conclude that the exercise of personal jurisdiction by an Oregon court would surprise defendant, or otherwise not comport with due process or the tenants of "fair play and substantial justice." See World-Wide Volkswagen Corp. , 444 U.S. at 291-92, 100 S.Ct. 580.
I respectfully dissent.